# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| M&G PARTNERS LLP, *d/b/a* FASHION ANGELS ENTERPRISES,<br><br>Plaintiff,<br><br>v.<br><br>K7 DESIGN GROUP INC. and WALMART INC.,<br><br>Defendants. | Case No. 17-CV-1514-JPS<br><br><br>**ORDER** |

Plaintiff, M&G Partners LLP ("M&G"), filed this action on November 3, 2017, alleging trademark infringement, unfair competition, and contract-based claims against Defendants, K7 Design Group, Inc. ("K7") and Walmart Inc. ("Walmart"). (Docket #1). Two months earlier, K7 filed suit against M&G in the United States District Court for the Southern District of New York, asserting breach of contract and various other claims under federal and New York law. K7 believes that M&G's claims in the present action represent compulsory counterclaims that should have been brought in the New York action. As such, it has moved to dismiss or stay this case. (Docket #21). The motion is fully briefed and, for the reasons stated below, it will be granted.[1]

---

[1] K7 also moved in the alternative for dismissal of certain counts of the complaint on the ground that they do not state viable claims for relief. (Docket #22 at 10–13). As explained below, the counts in question have been voluntarily dismissed, so that portion of K7's motion is now moot.

1.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 13(a)(1)(A) defines a compulsory counterclaim as one which the pleader has against his opponent at the time of service and which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A party usually must state compulsory counterclaims or else he will be precluded from doing so in later litigation. *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007). By contrast, any counterclaim that is not compulsory is merely permissive, and failing to join such a claim will not bar a subsequent action thereon. Fed. R. Civ. P. 13(b).

If a defendant believes that the plaintiff's claims are compulsory counterclaims that should have been brought in another pending action, the defendant may file a motion to dismiss under Rule 12(b). *See Twin Disc, Inc. v. Lowell*, 69 F.R.D. 64, 66 (E.D. Wis. 1975); *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 752 (7th Cir. 2015). Alternatively, the court presiding over the second-filed action may enter a stay while the court presiding over the first-filed action considers whether to enjoin the second suit. *See Harley-Davidson Motor Co. v. Chrome Specialties, Inc.*, 173 F.R.D. 250, 251 (E.D. Wis. 1997); *Inforizons, Inc. v. VED Software Servs., Inc.*, 204 F.R.D. 116, 118 (N.D. Ill. 2001). Whatever the remedy, the court in this context accepts as true all well-pleaded allegations in the complaint and draws all reasonable factual inferences in the plaintiff's favor. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

2.  **RELEVANT FACTS**

M&G is "a leading designer and manufacturer of tween girls' lifestyle and activity products." (Docket #7 ¶ 8). One of its brands is called "Fashion Angels." M&G owns federal registrations for the word mark FASHION ANGELS and several permutations thereof, as well as logos bearing the words "Fashion Angels." *Id.* ¶ 10. Products sold under the "Fashion Angels" marks include, for example, beauty products, costume jewelry, and activity sets.

This case and the New York action filed by K7 arise from a sales and distribution agreement that M&G entered into with K7 in December 2016 and the ensuing course of dealings between the parties. The relationship revolved around building a showroom in New York City and selling M&G's products under the "Fashion Angel" trademarks to at least twelve major vendors, including Walmart and Target.

K7 brokered several deals on behalf of M&G with major retailers in early 2017. One such deal was with Walmart. K7 facilitated communications between M&G and Walmart starting in February 2017, with an eye toward putting "Fashion Angels" products on store shelves by the fourth quarter of that year. On April 28, 2017, K7 informed M&G that Walmart had approved visuals of M&G's products. M&G sent physical samples and pricing documents to Walmart that same day.

The parties exchanged some emails in early and mid-June 2017 regarding the products. However, K7 did not notify M&G until June 26, 2017 that Walmart had selected two M&G products for sale at Walmart stores. That day, M&G was told that its products were to be sold at 2,112 stores and had to be shipped by September 15, 2017.

On June 30, 2017, M&G informed K7 that it could not meet that shorty delivery timeline. Walmart cancelled the order. It then sourced very similar products directly from K7 which were not genuine M&G products, yet were sold under the "Fashion Angels" trademarks. For these reasons, and others detailed in the complaint in the New York action, the parties' relationship soured.

On September 12, 2017, K7 and its president, Isaac Kaplan, filed a complaint against M&G and several of its executives, alleging claims for breach of contract, unjust enrichment, fraudulent inducement, religious discrimination, failure to accommodate, and an accounting, in the United States District Court for the Southern District of New York, Case No. 1:17-CV-06943. The complaint was subsequently amended to include a cause of action for violation of the New York Labor Law, among other claims. The New York action contemplates not only the failed Walmart deal, which K7 blames on M&G, but also numerous other problems that arose from the parties' relationship, including K7's claim that M&G has not paid promised sales commissions. *See* (Docket #23-1, #23-2).

Two months after K7 commenced the New York action, on November 3, 2017, M&G filed this action against K7. (Docket #1). M&G amended its complaint on December 12, 2017 to join Walmart as a defendant. (Docket #7). The amended complaint states six separate counts: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) common law unfair competition and trademark infringement; (4) civil conspiracy; (5) breach of contract and the implied duty of good faith and fair dealing, brought solely against K7; and (6) tortious interference with prospective contracts, again brought solely against K7. *Id.* at 14–20.

After filing this action, M&G filed a motion in the New York case to transfer it here. On February 7, 2018, the motion was denied.

3.  **ANALYSIS**

The present dispute centers on how to define a "transaction or occurrence" for purposes of Rule 13. Specifically, the Court must decide whether M&G's claims in this case arise from the same transaction or occurrence that underlies the New York action. If so, M&G's claims should be raised, if at all, as counterclaims in the New York case.

K7 urges the Court to view M&G's case as a set of compulsory counterclaims to its New York action, to promote federal policy against fragmentation of litigation. M&G argues that its claims are factually and analytically distinct from those in the New York action, despite the fact that the parties' business relationship undergirds both cases. Thus, in M&G's view, judicial economy would not be served by forcing the claims to be heard together.

The Seventh Circuit gives Rule 13 a "generous reading." *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977). "As a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). The purpose of the Rule is to "prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Id.*; *Twin Disc*, 69 F.R.D. at 68.

The Court of Appeals has expressly rejected as a test "whether the issues or facts are so interwoven that resolution of the disputed issues in one case will involve factual or legal conclusions affecting the determination of issues in the other case." *Warshawsky*, 552 F.2d at 1263. In

the Seventh Circuit's view, "such arguments represent merely an effort to have this court apply the 'identity of issues,' 'res judicata,' or 'same evidence' tests rather than the crucial 'logical relationship' test." *Id.* Thus, the question under Rule 13 is not solely whether some form of estoppel might arise from separate adjudication of the two actions. The inquiry instead focuses on the broader question of whether the actions are logically related. *See Harley-Davidson*, 173 F.R.D. at 252 (that the legal claims are different in each action "alone is not determinative where, as here, certain core facts are common and material to both actions"); 6 Fed. Prac. & Proc. Civ. § 1410 (3d ed. 2017) (discussing differences between logical-relationship test and other tests used to identify compulsory counterclaims).

Of course, some correspondence in the law or evidence will usually exist between a claim and a compulsory counterclaim. This is because the logical relationship test considers "the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). In making this assessment, courts should avoid a "wooden application of the common transaction label." *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 397 (7th Cir. 1986).[2]

---

[2]*Colonial Penn Life Insurance Co. v. Hallmark Insurance Administrators, Inc.*, 31 F.3d 445, 448 (7th Cir. 1994), is often cited for the principle that the Seventh Circuit's formulation of the logical relationship test is "narrow," focused primarily on whether resolution of the first action would bar the purported counterclaim under the principles of res judicata. But that is not what the decision says; it merely repeats a law student's suggestion that the test is a narrow one. *Id.* (quoting Comment, *Narrowing the Scope of Rule 13(a)*, 60 U. Chi. L. Rev. 141 (1993)). The resolution of *Colonial Penn* did not turn on whether the test is broad or narrow, since it was unmistakable that the claims at issue in that case lacked a logical

As noted above, M&G's first amended complaint contains six counts. In its opening brief, K7 argued that all six constituted compulsory counterclaims to its claims in the New York action. It also contended, in the alternative, that Counts IV and VI, the civil conspiracy and tortious interference claims, respectively, should be dismissed for failure to state a claim. (Docket #22 at 10–13).

However, in response to K7's motion, M&G voluntarily withdrew both Count V, breach of contract against K7, and Count VI. (Docket #31 at 2–3). Further, M&G recently settled its claims against Walmart and, as a result, also stipulated to the dismissal of Count IV. *See* (Docket #35, #36). Thus, the Court's analysis under Rule 13 is concerned only with Counts I–III, which are all federal and common-law trademark and unfair competition claims. *See* (Docket #7 at 14–16).

Although the only remaining claims here are for violation of M&G's intellectually property rights, the Court finds that these claims are sufficiently related to K7's claims in the New York action that they must be brought there. True, as M&G points out, the elements of K7's contract and other claims in the New York action do not map neatly onto its federal and common-law trademark claims in this case. For instance, it is not clear whether K7's desperation to fulfill the Walmart order would constitute a legal defense to its alleged trademark infringement, which is generally a strict-liability affair. *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 359 (7th Cir. 1983). But asking for identity of legal claims is just the sort of

---

relationship. *See id.* The Court of Appeals did not adopt the view that the logical relationship test should be construed narrowly, in contravention of the holdings in cases like *Warshawsky*. *See also Burlington*, 907 F.2d at 711 (noting that the definition of "transaction or occurrence" in this Circuit is given a "liberal construction").

rigidity that the Seventh Circuit has rejected in the Rule 13 context. *Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, Civil No. 08–832–GPM, 2009 WL 2431993, at *5 (S.D. Ill. July 31, 2009) ("A claim may be logically related to an action even though there is not complete identity of issues and parties between the original claim and the counterclaim."); *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 471 (7th Cir. 2011) (the logical relationship test "focuses on the facts of the case, rather than on the technical elements of the claims in question"). Moreover, it is likely that at least some legal overlap will occur. K7's excuse for appropriating the "Fashion Angels" marks might have more purchase as a defense to the common-law claim of unfair competition, and K7's justifications for violating M&G's trademark rights would probably inform any decision on damages. *See* 15 U.S.C. § 1117(a) (providing that a court may in its discretion adjust a compensatory damages award in a trademark infringement case as it deems "just, according to the circumstances of the case").

What matters here more than the operative legal theories is that the core facts in both sets of claims are the same. In the New York action, one of the primary questions will be whether M&G's failure to satisfy the Walmart order constituted a breach of its contract with K7, and, if so, whether that breach justified K7's use of the "Fashion Angels" marks. (Docket #23-2 ¶ 56). This case is simply the other side of that coin, asking whether K7's use of M&G's trademarks after the alleged breach constituted infringement of M&G's intellectual property rights. That M&G's claims concerning the Walmart saga arise from trademark statutes and common law, whereas K7's claims arise primarily from contract law, is not determinative. *Keith A Keisser Ins. Agency, Inc. v. Nationwide Mut. Ins. Co.*, 246 F. Supp. 2d 833, 835 (S.D. Ohio 2003) (finding that breach of contract

and federal trademark claims were logically related "even though [the Lanham Act claim] is based on a federal statute and sounds in tort, rather than in contract").

This case is much like *In re Price*, 43 F.3d 1068, 1073 (7th Cir. 1994), where the Seventh Circuit found that the IRS' claim to the debtors' unpaid taxes was logically related to the debtors' claim that the IRS violated the automatic stay in bankruptcy by trying to collect those taxes. The legal theories applicable to each claim were distinct, but the Court of Appeals nevertheless concluded that "[t]he basis of both claims revolve around the same aggregate core of facts—the debtors' unpaid taxes." *Id.* It was clear that without the unpaid taxes, there would have been no collection attempt. *Id.* So too, here, although M&G seeks to vindicate its trademark rights and K7 its contractual rights, both fundamentally depend on what occurred in connection with the Walmart deal. The two sets of claims are far more than "technically" related. *Gilldorn*, 804 F.2d at 397.

An examination of the parties' competing complaints reveals that the two sets of claims arise from the same continuous course of dealing. *Warshawsky*, 552 F.2d at 1262; *Gilldorn*, 804 F.2d at 397 (a logical relationship can exist when the claims "spring from a continuous course of dealings between the parties"). Indeed, unlike the Truth in Lending Act and debt collection claims at issue in *Valencia v. Anderson Brothers Ford*, 617 F.2d 1278, 1291 (7th Cir. 1980), which were connected only by "the initial execution of the loan document," here the parties' dispute finds its genesis in their contract but depends as well upon the remainder of the course of dealing, including the failure of the Walmart delivery and beyond. As such, resolution of one action will likely depend upon factual development that will be equally necessary to disposition of the other. Avoiding duplication

of effort in each court counsels in favor of the two sets of claims being adjudicated in the same proceeding. *AMP Inc. v. Zacharias*, No. 87 C 3244, 1987 WL 12676, at *1 (N.D. Ill. June 15, 1987). For all these reasons, the Court finds that M&G's present claims and K7's claims in the New York action are logically related and therefore arise from the same transaction or occurrence within the meaning of Rule 13(a).[3]

This Court's decision in *Super Natural Distributors, Inc. v. MuscleTech Research and Development*, 140 F. Supp. 2d 970 (E.D. Wis. 2001), relied upon by M&G, does not suggest a different result. There, a dietary supplement manufacturer sued several individuals and entities in the Southern District of New York for counterfeiting its goods. *Id.* at 972. Those counterfeits were allegedly sold through a Wisconsin-based distributor that also distributed the manufacturer's genuine goods. *Id.* The manufacturer suspected that the distributor played a part in the counterfeiting operation and terminated the parties' relationship. *Id.* at 973.

After the case in New York was instituted, the distributor filed suit against the manufacturer in Wisconsin state court for illegally terminating the parties' relationship in violation of the Wisconsin Fair Dealership Law ("WFDL"). *Id.* at 973. That case was removed to this Court. *Id.* Afterward, the manufacturer filed an amended complaint in the New York lawsuit which joined the distributor as a defendant. *Id.* The distributor asked this Court to stay the claims against it in the New York case on the ground that

---

[3]Similar to the Seventh Circuit's decision in *Phoenix*, this Court does not hold that all claims of intellectual property infringement are compulsory counterclaims to an underlying contract dispute. *See Phoenix*, 653 F.3d at 471. Instead, it is primarily the close factual congruence between this action and the New York action that compels that conclusion in this particular instance.

they were compulsory counterclaims that should have been raised in the Wisconsin action. *Id.*

This Court disagreed, finding that the claims in the Wisconsin and New York suits were not sufficiently related such that the New York claims could be considered compulsory counterclaims in the Wisconsin action. *Id.* The Court's decision turned on the particular facts and circumstances presented, as often happens in a Rule 13(a) inquiry. *Phoenix*, 653 F.3d at 471. Critically, the Court had already found that the distributor's assertion of a dealership relationship as defined in the WFDL was dubious, having a "significantly less than 50%" chance of being proven. *Super Natural*, 140 F. Supp. 2d at 977. As such, the Court anticipated that resolving the Wisconsin action would do little to advance the resolution of the counterfeiting claims that were the focus of the New York action. *Id.* Moreover, the New York action would inevitably have to resolve the question of whether counterfeiting occurred, and who was responsible, whereas the Wisconsin WFDL claim could be disposed of on statutory grounds by finding that the manufacturer had some other "good cause" to terminate the dealership relationship, even assuming one had been formed. *Id.*

M&G appeals to *Super Natural* for the proposition that the parties' underlying contractual relationship is not enough to make all claims stemming therefrom logically related. (Docket #31 at 4). Such a view equates a logical relationship with having the "same basic origin story," which is not what Rule 13 looks for. *Id.* This is certainly true, but the factual overlap between the two actions at issue here is more robust than the underlying contract. Both cases will be concerned with the entire course of dealing that led to the failed Walmart delivery and K7's attempt to salvage the situation. As a result, it cannot be said that the two actions have a

"remote common origin." *Greene v. U.S. Dep't of Educ.*, 770 F.3d 667, 670 (7th Cir. 2014). Rather, they center on "a shared realm of genuine dispute." *Id.*[4]

In sum, the Court finds that judicial economy would be best served by trying M&G's and K7's claims together. The Court therefore finds that M&G's claims in this action are compulsory counterclaims that must be brought, if at all, in K7's New York action.[5]

**4.    CONCLUSION**

The Court has found that M&G's claims of trademark infringement and unfair competition are logically related to the contract and other claims asserted against it by K7 in the New York action. As a result, they must be deemed compulsory counterclaims under Rule 13(a).

M&G opposed K7's motion but said nothing about whether the Court should stay or dismiss the case if the motion was granted. Having no reason to believe that M&G would be unable to raise the claims in this case as counterclaims in the New York action, the Court finds that the better utilization of its time and resources is dismissal rather than a stay. *See Inforizons*, 204 F.R.D. at 120 ("The plaintiff bears the burden of showing a

---

[4]For similar reasons, this case is unlike *Multiut Corporation v. Dynergy, Inc.*, No. 04 C 8283, 2005 WL 1041324 (N.D. Ill. Apr. 13, 2005), cited by M&G. There, in the first action a supplier of natural gas sued its sales agent for breach of contract. *Id.* at *1. The second lawsuit, filed by the sales agent, alleged that the supplier conspired with others to violate antitrust laws by manipulating gas prices. *Id.* at *2. The court found that the two sets of claims were not compulsory counterclaims, as the only thing tying the first and second lawsuits together was that the supplier sold natural gas. *Id.* at *3. The operative conduct and legal theories were distinct. *Id.* Here, while the legal claims and defenses may not overlap completely between this and the New York action, the facts certainly do to a great extent.

[5]Rule 13(a)(2) sets forth two exceptions to the compulsory counterclaim rule, but neither apply here, and M&G does not argue otherwise. *See* Fed. R. Civ. P. 13(a)(2); (Docket #22 at 9–10); (Docket #31).

compelling circumstance or imbalance of convenience to overcome the presumption that the second-filed case should be dismissed in favor of the first-filed case.").

Accordingly,

**IT IS ORDERED** that Counts IV, V, and VI of Plaintiff's amended complaint (Docket #7) be and the same are hereby **DISMISSED** from this action pursuant to Federal Rule of Civil Procedure 41(a);

**IT IS FURTHER ORDERED** that Defendant K7 Design Group, Inc.'s motion to dismiss (Docket #21) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the stipulation of dismissal between Plaintiff and Defendant Walmart Inc. (Docket #36) be and the same is hereby **ADOPTED**; Plaintiff's claims against Walmart Inc. in this action be and the same are hereby **DISMISSED with prejudice** and without costs or attorney's fees to any party; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2018.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge